**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GLENWOOD McKINLEY GIBSON, JR., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civ. No. 17-6507 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter has come before the Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final decision of the Social Security Administration (the "SSA") denying the applications of Plaintiff Glenwood Gibson, Jr. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), § 201 *et seq.*, and Supplemental Security Income ("SSI") under Title XVI of the Act, § 1601 *et seq*. Plaintiff requests that the Court remand the matter to the SSA for further administrative proceedings. (Pl.'s Br. at 13–14, ECF No. 19.) Defendant Acting Commissioner of the SSA (the "Commissioner") seeks affirmance of the SSA's decision. (Def.'s Br. at 1, ECF No. 20.) The Court has decided the appeal upon the submissions of both parties and without oral argument, pursuant to Local Civil Rule 9.1(f). For the reasons detailed below, the decision of the Commissioner is vacated and the matter is remanded.

1

## BACKGROUND

Plaintiff, now fifty-three years of age, filed an application for both DIB and SSI, alleging disability, on June 11, 2013 (collectively, the "Applications"). (Admin. Record ("R.") at 73–91, ECF No. 12.) Plaintiff alleges that he has suffered, and continues to suffer, from high blood pressure, back pain, anxiety, degenerative disc disease, sciatica, a pinched nerve in his back, and knee pain since the date of onset, September 15, 2011. (*Id.*)

On September 17, 2013, the SSA denied Plaintiff's Applications (*id.*); and on February 20, 2014, the SSA denied Plaintiff's request for reconsideration (R. at 119–47). On March 5, 2014, Plaintiff requested a hearing before an administrative law judge ("ALJ") (R. at 172–75), which was held on March 2, 2016 (*see* R. at 32–67).

On April 18, 2016, the ALJ issued a decision denying Plaintiff's claims for both DIB and SSI. (R. at 12–31.) Plaintiff sought review by the Appeals Council, but that was denied on June 30, 2017. (R. at 1–3.) The ALJ's decision therefore constitutes final action by the Commissioner.

On August 29, 2017, Plaintiff filed the present appeal of the Commissioner's final decision with the U.S. District Court. (ECF No. 1.) Pursuant to Local Civil Rule 9.1, Plaintiff submitted a brief on June 25, 2018 (ECF No. 19), and the Commissioner submitted a brief on August 6, 2018 (ECF No. 20). On December 11, 2018, this case was reassigned to the Honorable Anne E. Thompson, U.S. District Judge for the District of New Jersey. (ECF No. 21.) This appeal is currently before the Court.

## LEGAL STANDARDS

**I.    Standard of Review**

This Court reviews Social Security appeals under § 405(g), which empowers this Court to

enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." In reviewing the ALJ's decision, this Court reviews questions of law de novo. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (2007). In contrast, this Court reviews questions of fact under a "substantial evidence" standard of review. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of the SSA*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Where the ALJ's factual findings are supported by substantial evidence in the record, they are considered conclusive even though the Court might have decided the inquiry differently. § 405(g); *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

## II. Standard for DIB and SSI Determination

Where, as here, the claimant files concurrent applications for DIB and SSI, "courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act." *Miller v. Astrue*, 2012 U.S. Dist. LEXIS 86874, at *12–13 (W.D. Pa. June 22, 2012) (citing *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d. Cir. 2002) ("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB].")). The SSA must pay benefits to "disabled" persons: individuals who have an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." § 423(d)(1)(A). The impairment must be "of such severity that [the individual] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." *Id.*

3

The SSA employs a five-step sequential evaluation process for disability claims. *See generally* 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Plummer*, 186 F.3d at 428. The threshold inquiry looks to (1) whether the claimant has engaged in any "substantial gainful activity" since her alleged disability onset date. § 404.1520(a)(4)(i). If not, the Commissioner considers (2) whether the claimant has any impairment or combination of impairments that is "severe" enough to limit the claimant's ability to work. §§ 404.1520(a)(4)(ii), (b)–(c); 404.1521. If the claimant has a severe impairment, the Commissioner then examines the objective medical evidence to determine (3) whether the impairment matches or equals one of the impairments listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P. §§ 404.1520(a)(4)(iii), (d); 404.1525; 404.1526. If so, the claimant is then eligible for benefits; if not, the Commissioner determines (4) whether the claimant has satisfied his burden of establishing that he is unable to return to his past relevant work given his medical impairments, age, education, past work experience, and Residual Functional Capacity ("RFC"), which is a claimant's remaining ability to perform work given his or her impairments. §§ 404.1520(a)(4)(iv); 404.1560(b); *Poulos*, 474 F.3d at 92. If the claimant meets this burden, the burden shifts to the Commissioner to show (5) whether other work exists in significant numbers in the national economy that the claimant could perform. § 404.1520(a)(4)(v), (e), (g); *Poulos*, 474 F.3d at 92

## DISCUSSION

**I.      The ALJ's Opinion**

Following this five-step process, the ALJ here found the following: (1) Plaintiff has not engaged in substantial work since the alleged date of onset, September 15, 2011 (R. at 17); (2) Plaintiff suffers from numerous "severe" impairments, including back disorder, essential hypertension, and obesity (R. at 17–18) and from a "mild" mental impairment rated as "non-

severe" (R. at 18); (3) Plaintiff does not suffer from an impairment that meets or medically equals the severity of an impairment listed in Appendix 1 (R. at 19); (4a) Plaintiff maintains the RFC to perform "light work" as defined in § 404.1567(b) and § 416.967(b) except that he can stand and walk for four hours and sit for six hours in an eight-hour workday, alternating sitting and standing every thirty to sixty minutes with a five to ten minute change of position while remaining on task (R. at 19–24); (4b) Plaintiff is unable to perform any past relevant work (R. at 24); and (5) considering Plaintiff's age, education, work experience, and RFC, Plaintiff can perform several jobs that exist in significant numbers in the national economy (R. at 25). Therefore, the ALJ concluded, Plaintiff was not disabled as of September 15, 2011. (*Id.*)

## II. Plaintiff's Challenges to the ALJ's Opinion

Plaintiff contends that "the Commissioner applied improper and incorrect legal standards" in determining that Plaintiff is not entitled to any DIB or SSI benefits and thus urges the Court to remand the matter to the Commissioner for further administrative proceedings. (Pl.'s Br. at 13–14.) In support, Plaintiff primarily attacks two portions of the ALJ's decision. First, Plaintiff contends that the ALJ failed to account for the impact of mild limitations in social functioning while assessing Plaintiff's RFC. (*Id.* at 6–11.) Second, Plaintiff contends that the ALJ's finding that Plaintiff can perform "light work" is not supported by substantial evidence. (*Id.* at 11–13.) Both errors, Plaintiff argues, are reversible errors of law.

### A. *Omitting Mild Limitations from Vocational Expert Hypothetical*

"Under the Social Security regulations, 'a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work.'" *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634

(3d Cir. 2010) (citing § 404.1560(b)(2)).  In addition, a vocational expert may also offer expert testimony "concerning a claimant's ability to perform alternative employment," but only "for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments."  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) (citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)).

Although an ALJ's "hypothetical question posed to a vocational expert 'must reflect all of a claimant's impairments,'" *id.* (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)), it need not contain "every impairment alleged by a claimant," *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).  Therefore, "the ALJ is bound to convey only those impairments that are medically . . . . [and] credibly established."  *Id.* (internal citations omitted).  As long as the claimant's limitations have not been "reasonably discounted"—by, for example, contradictory medical records or testimony—"[h]ypothetical questions posed to a VE should include even [his] mild functional limitations."  *Nichols v. Colvin*, 2015 U.S. Dist. LEXIS 64236, at *19–20 (E.D. Pa. Feb. 25, 2015) (citing *Rutherford*, 399 F.3d at 554–56).

Here, the ALJ failed to include Plaintiff's mild mental limitation in her hypothetical question to the testifying vocational expert.  During Step Two of her analysis, the ALJ evaluated Plaintiff's proffered mental limitation and concluded that Plaintiff "has mild restriction[s]" in regard to activities of daily living and "mild difficulties" in regard to concentration, persistence, or pace.  (R. at 18.)  Although the ALJ ultimately rated Plaintiff's mild mental limitation as "non-severe" (*id.*), the ALJ during Step Four gave "significant weight" to medical records reporting that Plaintiff's mental impairments were mild (R. at 24).  Nonetheless, the ALJ failed to include this limitation in her hypothetical question posed to the vocational expert while

6

assessing whether Plaintiff can perform any jobs existing in significant numbers in the national economy. (R. at 25; *see also* Alberigi Test., R. at 59–66.)

The Commissioner concedes this omission and instead contends that "it is not error to omit the limitation from the . . . hypothetical question to the vocational expert." (Def.'s Br. at 11–12.) But the Commissioner also concedes that Plaintiff has identified "cases in this Circuit finding that an ALJ must incorporate mild mental limitations from step three in the RFC assessment or hypothetical question." (*Id.* at 12.) Although the Commissioner argues that "this issue is far from settled" notwithstanding these cases (*id.*), the Court finds one such case particularly persuasive.

In *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004), the plaintiff argued that "the ALJ failed to include in her hypothetical the finding she had made . . . that [the plaintiff] often suffered deficiencies in concentration, persistence, or pace." *Id.* at 549. The Third Circuit held "that the hypothetical did not accurately convey all of [the plaintiff's] impairments, and the limitations they cause, and therefore the ALJ's decision [was] not supported by substantial evidence." *Id.* at 552. Similarly, the ALJ here acknowledged that Plaintiff has "mild restriction[s]" in activities of daily living, "mild difficulties" in social functioning, and "mild difficulties" in concentration, persistence, or pace (R. at 18), but failed to include these limitations in her hypothetical to the vocational expert. Although the ALJ expressed doubt that Plaintiff's mental limitations were "moderate" (R. at 24), the ALJ consistently rated Plaintiff's mental limitations as "mild" and otherwise provided no reason to discount—what the ALJ describes as—the "medically determinable impairment" of Plaintiff (R. at 18).

Although the Commissioner argues that omitting this sort of mild limitation is harmless as long as the limitation is "minimal or negligible" (Def.'s Br. at 12–13), the Commissioner fails

7

to proffer why this specific limitation is minimal or negligible. Indeed, the omitted limitations must be "'so minimal or negligible' that they would not significantly limit [the claimant's] ability to perform the work and [thus would] not warrant further questioning of the [vocational expert]." *Stewart v. Astrue*, 2012 U.S. Dist. LEXIS 75681, at *67 (E.D. Pa. May 31, 2012) (citing *Ramirez*, 372 F.3d at 555). Because the ALJ heavily relied upon the vocational expert's testimony in her Step Five analysis (*see* R. at 25) and "the Commissioner bears the burden of establishing the existence of other available work that the claimant is capable of performing" under Step Five, *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014), the ALJ's decision was not supported by substantial evidence, *see Deitz v. Astrue*, 2008 U.S. Dist. LEXIS 15617, at *30–31 (D.N.J. Feb. 29, 2008) (remanding because "the ALJ's hypothetical did not adequately capture all of [p]laintiff's limitations by failing to recite her [mild] limitations in concentration, persistence, and pace"); *see also Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016) (relying on *Ramirez* and remanding because the "hypothetical questioning did not include [p]laintiff's credibly established mild limitations in activities of daily living and concentration, persistence, or pace"). On remand, the ALJ should include all of Plaintiff's mental impairments in any hypothetical questions to the vocational expert.

   B.  *Finding that Plaintiff Can Perform "Light Work"*

  Plaintiff also contends that the ALJ's finding that Plaintiff can perform "light duty" jobs is not supported by substantial evidence. (Pl.'s Br. at 11–13.) Plaintiff points out that Plaintiff's exertional limitations, as offered by the ALJ, place Plaintiff's RFC directly in between "sedentary" and "light" work. The ALJ found that Plaintiff is capable of standing or walking for four hours and sitting for six hours in an eight-hour workday, alternating sitting and standing every thirty to sixty minutes. (R. at 19.) The statute defines light work as "requir[ing] a good

8

deal of walking or standing." § 404.1567(b). However, Social Security Rule ("SSR") 83-10 offers further guidance: *light* work "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and *sedentary* work requires "standing or walking . . . generally total[ing] no more than about 2 hours of an 8-hour workday." SSR 83-10, 1983 SSR LEXIS 30, at *13–14. Plaintiff's exertional limitations indeed place him directly in between light and sedentary work.

Plaintiff primarily argues that the ALJ failed to comply with DI 25025.015 of the Program Operations Manual System ("POMS") (Pl.'s Br. at 12.), which recommends that where a claimant's "exertional capacity falls in the middle of two rules," the Commissioner should "find the claimant disabled if [the Commissioner] conclude[s] the claimant has a significantly reduced capacity for the higher level of exertion" (DI 25025.015 D). Plaintiff argues that the Commissioner was required to follow POMS, and thus the Commissioner's failure to do so warrants remand. (*Id.* at 13.)

POMS is "the publicly available operating instructions for processing Social Security claims." *Artz v. Barnhart*, 330 F.3d 170, 176 (3d Cir. 2003) (quoting *Wash. State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003)). But the SSA states clearly on its website that POMS "is intended for SSA employees." *POMS Home*, SSA, https://secure.ssa.gov/apps10/ (last visited Dec. 18, 2018). In fact, "[w]hile POMS Guidelines warrant respect, the Court of Appeals has made clear that '[POMS] regulations do not have the force of law.'" *Echevarria v. Acting Comm'r of Soc. Sec.*, 2017 U.S. Dist. LEXIS 164143, at *15 (D.N.J. Sep. 27, 2017) (quoting *Edelman v. Comm'r Soc. Sec.*, 83 F.3d 68, 71 n.2 (3d Cir. 1996)); *see also Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) ("POMS . . . provisions do not aid [the plaintiff], however, because they lack the force of law and create no

judicially-enforceable rights."). Therefore, the ALJ did not commit reversible error by failing to discuss POMS DI 25025.015.

Regardless, substantial evidence supports the ALJ's conclusion that Plaintiff is capable of performing light work. The ALJ thoroughly discussed Plaintiff's medical records and adequately explained to which records she gave more weight and to which records she gave less weight.[1] The fact that the Court mandates remand regarding Step Five, as discussed above, does not change the Court's conclusion here. In contrast to the ALJ's failure to properly phrase her hypothetical to the vocational expert in aid of her Step Five analysis, which places the burden on the Commissioner, the ALJ adequately weighed the medical evidence in the record in aid of her Step Four analysis, where Plaintiff bears the burden. Moreover, the ALJ actually discussed Plaintiff's mental limitations when she was determining Plaintiff's RFC during Step Four. (R. at 23–24.) Accordingly, Plaintiff's argument fails to the extent that it assigns error to the ALJ's conclusion that Plaintiff is capable of performing light work.

---

[1] *See, e.g.*, R. at 20 ("Dr. DiLorenzo's opinion is given little weight as it does not offer any quantified limitations and makes only a general statement about abilities and limitations."); R. at 22 (finding that "a review of the medical evidence demonstrates that the claimant's and his third party's allegations as to the extent of his impairments and limitations are not fully credible, and the record does not support her allegations that his ability to function is so impaired as to render him totally disabled"); R. at 23 (concluding that the Medical Source Statement dated March 6, 2013 "is given some weight as it supports the finding that the claimant cannot return to past work, but that he could perform other work within the [RFC] above"); R. at 23 ("[Dr. Getty's] opinion is given reduced weight because the evidence does not support such significant limitations."); R. at 23 (finding that the initial level State agency medical consultants' physical assessments "are given little weight, because evidence at the hearing level shows that the claimant is more limited than determined by the State agency consultants"); R. at 24 (conferring "significant weight" on the reconsideration level State agency physiological consultants' conclusion that Plaintiff "has mild restriction of activities of daily living and difficulties and [sic] in social functioning," but "little weight" on its conclusion that Plaintiff has "moderate limitation in maintaining concentration, persistence or pace . . . because the evidence does not support a greater limitation in this area").

## **CONCLUSION**

For the reasons discussed above, the ALJ's decision is vacated, and the matter is remanded to further consider what effect Plaintiff's mild mental limitations may have on whether Plaintiff can perform jobs that exist in significant numbers in the national economy. An appropriate Order will follow.


Date: 12/21/2018  /s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.